FILED
Clerk
District Court
APR 23 2019
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

MILAN FARGO, ) Case No. 19-CV-00004
)
    Plaintiff, )
        v. ) ORDER DISMISSING PRO SE
) COMPLAINT ON PRELIMINARY
FEDERAL EMERGENCY ) SCREENING
MANAGEMENT AGENCY, )
)
    Defendant. )
)

## I. INTRODUCTION

Typhoon Soudelor devastated the island of Saipan on August 2–3, 2015. Plaintiff is a resident of Saipan who, in the aftermath of Soudelor, received thousands of dollars in disaster assistance from the Federal Emergency Management Agency (FEMA). In 2017, FEMA notified Plaintiff that it had determined he was ineligible for that assistance and must pay it back to the Government. The following year, Plaintiff received a notice from a debt collection agency that he owed a balance of over four thousand dollars.

Before the Court is pro se Plaintiff Milan Fargo's Complaint against FEMA (ECF No. 1-1) for relief from that determination of debt, as well as his Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Application," ECF No. 1). The Court finds that Plaintiff qualifies to proceed in forma pauperis and screens the Complaint pursuant to 28 U.S.C. § 1915(e)(2). Upon screening, the Court determines that the Complaint fails to state a claim because Plaintiff has not exhausted administrative remedies, and therefore dismisses the case without prejudice.

## II. LEGAL STANDARD

If at any time the Court determines that an in forma pauperis complaint is (i) frivolous or malicious, (ii) fails to state a claim on which relief may be granted, or (iii) seeks money damages

1

against an immune defendant, the case must be dismissed. 28 U.S.C. § 1915(e)(2). A complaint is frivolous if it "lacks an arguable basis either in law or in fact" or contains "fanciful factual allegation[s]." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A malicious complaint is one that abuses the judicial process by relitigating claims previously decided or evidences an intent to vex defendants. *Crisafi v. Holland,* 655 F.2d 1305, 1309 (D.C. Cir. 1981); *Phillips v. Carey,* 638 F.2d 207 (10th Cir. 1981). The standard for adequately stating a claim is the same as the one that is applied under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Watison v. Carter,* 668 F.3d 1108, 1112 (9th Cir. 2012). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. In applying these standards to a pro se complaint, a district court must construe the pleadings liberally. *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010).

### III.     BACKGROUND

The pleadings consist of a two-page Complaint and the following attached documents: (1) an email dated November 13, 2018, from Plaintiff to the Secretary of the Department of Homeland Security (DHS), (2) an email Plaintiff sent that same day to the Attorney General at the Department of Justice; (3) a letter from FEMA to Plaintiff, dated November 13, 2017 – exactly one year prior to Plaintiff's two emails – and (4) a debt-collection notice from Transworld Systems Inc., to Plaintiff, dated September 10, 2018. Plaintiff's Complaint and emails are at times rambling and leave many loose ends, but from them and the letters from FEMA and Transworld Systems the following narrative emerges.[1]

---

[1] The Court may consider the emails and letters in determining whether to dismiss for failure to state a claim because Plaintiff refers to them in his complaint, they are central to his claim, and their authenticity is not questioned. *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006).

1   Sometime after August 5, 2015, when the President declared a major disaster in the
2   Northern Mariana Islands, Plaintiff applied to FEMA for disaster assistance. A FEMA
3   representative inspected the damage to Plaintiff's living space, checked his documents and
4   determined that Plaintiff, an alien, was eligible for assistance. (Email to AG, ECF No. 1-1, pp.
5   8–9.) Subsequently, FEMA gave Plaintiff approximately $2,990 in disaster assistance, which
6   Plaintiff spent on "unmet needs in those hard years of survival." (*Id.,* p. 8.)
7   Sometime in 2017, FEMA conducted an audit and determined that Plaintiff was ineligible
8   for some or all of the funds it had provided him. (FEMA letter, ECF No. 1-1, p. 11.) FEMA sent
9   Plaintiff a Notice of Debt informing him of this determination, outlining its review of his case,
10  and providing him clear instructions on his options, including filing an appeal within 60 days of
11  receipt of the Notice. (*Id.*)
12  On November 13, 2017, FEMA sent Plaintiff a letter informing him that his debt was now
13  final, either because he had not appealed it within 60 days or his appeal had been denied. (*Id.*) It
14  noted that its records showed Plaintiff had not repaid any of the debt and that if within 30 days
15  Plaintiff did not set up a payment plan or request a compromise of the debt, it would be referred
16  to the Department of the Treasury for collection. (*Id.*)
17  On September 10, 2018, Transworld Systems Inc. sent Plaintiff a notice that Treasury had
18  referred to it for collection a debt of $4,217.22, including the principal amount of $2,990.78.
19  (Transworld letter, ECF No. 1-1, p. 12.) It gave instructions on how to dispute the debt within 30
20  days of receiving the notice and on where to send payment. (*Id.*) Plaintiff received the notice on
21  October 1, 2018. (Fargo email to DHS, ECF No. 1-1, p. 4.)
22  On November 4, 2018, Plaintiff faxed an appeal to FEMA. (Compl., p. 3.) In the
23  Complaint, Plaintiff states: "There has been no response." (*Id.*) However, in emails sent
24  November 13, 2018, to the Secretary of DHS and the Attorney General, Plaintiff makes it clear
25  that FEMA responded on November 8 by sending him a copy of its November 13, 2017 letter.

3

"In response to my appeal, in November 8, 2018, I got disaster 4235 FEMA determination[2] of 13/11/2017 (!) regarding my case #[redacted]." (Email to DHS Secretary, ECF No. 1-1, p. 4; email to AG, ECF No. 1-1, p. 8.)

In the November 13, 2018 emails to the Secretary of DHS and the Attorney General, Plaintiff stated that until he received Transworld's notice of debt on October 1, 2018, he "never had any idea of having any debt and of this determination." (Email to DHS Sec'y, p. 4; email to AG, p. 8.) He alleges that the collection effort is in retaliation for his separate lawsuit against DHS in this Court to establish he has lawful immigration status, and complains that FEMA wrongly denied him some of the benefits he had requested. (*Id.*) He further states, "In its document of 11/13.2017 letter, which came to me on November 8, 2018, FEMA already says 'Your debt is now final…'" (Email to DHS Sec'y, p. 5; email to AG, p. 9.) He notes that Saipan had been hit by another supertyphoon, Yutu, on October 25, 2018, and complains of the callousness of debt collection efforts stemming from the Soudelor disaster while the island was reeling from a second disaster. (Email to DHS Sec'y, pp. 5–6; email to AG, p. 9.) He asserts that FEMA's audit determination that he is ineligible for Soudelor relief is "baseless." (Email to DHS Sec'y, p. 6; email to AG, p. 10.) He suggests that even if an error was made, it was the fault of FEMA's own representative who inspected his documents and it is unfair to make Plaintiff return the money. (Email to DHS Sec'y, p. 5, email to AG, pp. 8–9.) He asks the Secretary of DHS to cancel FEMA's November 13, 2017 determination of debt and to assist him in recovery from Yutu. (Email to DHS Sec'y, p. 6.)

### IV.   DISCUSSION

In the Complaint, Plaintiff asks the Court to cancel FEMA's determination that he was ineligible for some or all of the relief he received after Typhoon Soudelor. (Compl., ECF No. 1-

---

[2] DR-4235 is the FEMA designation for the Typhoon Soudelor disaster.

4

1, p. 2.) The Complaint lacks "a short and plain statement of the grounds for the court's jurisdiction," as required by Rule 8(a) of the Federal Rules of Civil Procedure. A court may, however, "find a basis for federal question jurisdiction even if a complaint lacks such a jurisdictional statement, so long as the complaint makes 'references to federal law sufficient to permit the court to find § 1331 jurisdiction.'" *Scarborough v. Carotex Const., Inc.,* 420 Fed. Appx. 870, 873 (11th Cir. 2011) (quoting *Miccosukee Tribe of Indians v. Kraus-Anderson Const. Co.,* 607 F.3d 1268, 1275–76 (11th Cir. 2010)). The Complaint's references to the Robert T. Stafford Disaster Relief and Emergency Assistance Act (Stafford Act), codified at 42 U.S.C. §§ 5121–5207, satisfy the Court that it has federal-question jurisdiction under 28 U.S.C. § 1331.

Whether the Court has the authority to adjudicate this claim against a federal agency is a different matter. The United States enjoys sovereign immunity from suit "save as it consents to be sued, . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood,* 312 U.S. 584, 586 (1941)). "The United States, as sovereign, is immune from suit in state or federal court except to the extent that Congress has expressly waived such sovereign immunity." *Tritz v. U.S. Postal Serv.,* 721 F.3d 1133, 1136 (9th Cir. 2013). The Stafford Act does not waive sovereign immunity from suit for claims "based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of [the Act]." 42 U.S.C. § 5148. The discretionary function exception precludes judicial review of "all disaster relief claims based upon the discretionary actions of federal employees." *Graham v. FEMA,* 149 F.3d 997, 1005 (9th Cir. 1998) (quoting *Rosas v. Brock,* 826 F.2d 1004, 1008 (11th Cir. 1987), *abrogated on other grounds as recognized in Novak v. United States,* 795 F.3d 1012, 1019 (9th Cir. 2015)). Disaster assistance is discretionary: "Federal agencies *may* on the direction of the President, provide assistance essential to meeting immediate threats to life and property resulting

5

from a major disaster[.]" 42 U.S.C. § 5170b (emphasis added). Most FEMA funding decisions are discretionary and not subject to review in the courts. *See Santos v. FEMA,* 327 F. Supp. 3d 328, 344 (D. Mass. 2018) (finding that housing assistance under the Stafford Act comes under the discretionary function exception); *City of San Bruno v. FEMA,* 181 F. Supp. 2d 1010, 1014 (N.D. Cal. 2001) (finding that Stafford Act eligibility determination within Public Assistance provision are a discretionary function of FEMA); *but see Graham,* 149 F.3d at 1006 (finding that statute granting FEMA discretion to withhold funds only if grantee-state had not complied with award conditions allowed judicial review of determination whether grantee-state had complied).

If Plaintiff was suing to reverse a FEMA determination to deny his application for Soudelor disaster assistance, sovereign immunity would prevent the Court from hearing the case. Instead, he turns to the Court for relief from FEMA's efforts to recoup money it has already given him. If a FEMA benefit duplicates relief provided by another source, the recipient is indebted to the United States in that amount and FEMA is obligated to recoup it. 42 U.S.C. § 5155(c) (stating that a person receiving duplicative disaster assistance "shall be liable" to the United States, and that the agency that provided the duplicative assistance "shall collect" it from the person); *State of Hawaii ex rel. Atty. Gen. v. FEMA,* 294 F.3d 1152, 1154 (9th Cir. 2002). Likewise, an agency must correct an erroneous determination that an alien is a "qualified alien" eligible to receive federal benefits, because "an alien who is not a qualified alien . . . is not eligible for any Federal public benefit." 8 U.S.C. § 1611. Audits to assure compliance with the Stafford Act are also mandatory. 42 U.S.C. § 5161(a) ("the President shall conduct audits and investigations as necessary to assure compliance with this Act, and in connection therewith may question such persons as may be necessary to carry out such audits and investigations."). This mandatory language suggests that FEMA's efforts to recoup disbursed benefits that are not authorized by Congress are nondiscretionary and are not immune from judicial review. Upon this preliminary

1  screening, and given the undeveloped record of the pro se Complaint and attachments, the Court
2  cannot find definitively that judicial review is precluded by the discretionary function exception.

3  Nevertheless, judicial review can only take place if Plaintiff has exhausted administrative
4  remedies and the agency has made a final determination. The Stafford Act itself "does not provide
5  for a private right of action on which the plaintiffs may rely." *Graham,* 149 F.3d at 1001; *see*
6  *also In re Katrina Canal Breaches Consol. Litig.,* Civil Action No. 05-4182, 2008 WL 2186400,
7  at *3 (E.D. La. May 27, 2008) (observing that Stafford Act "does not contain any language
8  providing for private right of action against the federal government"). The Administrative
9  Procedure Act ("APA") entitles Plaintiff to judicial review of an adverse agency action not
10 committed to agency discretion or otherwise precluded from review by statute. 5 U.S.C. §§ 701,
11 702. Review is limited, however, to "final agency action for which there is no other adequate
12 remedy in a court." 5 U.S.C. § 704. Under the APA, federal court review of final agency action
13 is available only once the petitioner has exhausted administrative remedies. *United States v.*
14 *Backlund,* 689 F.3d 986, 998–99 (9th Cir. 2012).

15 Under section 423 of the Stafford Act, "applicants for assistance under this subpart
16 [federal assistance to individuals and households] may appeal any determination of eligibility for
17 assistance under this subpart." 44 C.F.R. § 206.115(a). Eligibility determinations include
18 recoupment. 44 C.F.R. § 206.115(a)(1). Applicants "must file their appeal within 60 days after
19 the date that we notify the applicant of the award or denial of assistance." 44 C.F.R. § 206.115(a).
20 These regulations elaborate the appeal right granted in the Stafford Act: "Any decision regarding
21 eligibility [for assistance] may be appealed within 60 days after the date on which the applicant
22 for such assistance is notified of the award or denial of award of such assistance." 42 U.S.C. §
23 5189a(a).

24 On the face of the Complaint, it is apparent that Plaintiff did not exhaust FEMA's
25 administrative remedies. He states that he faxed his appeal to FEMA on November 4, 2018.

(Compl., p. 3.) That date is almost one year after FEMA's notice of November 13, 2017 that it had deemed his debt final. Actually, the agency determination was made even earlier, and Plaintiff was notified of it in the Notice of Debt referenced in the November 13, 2017 letter:

> As outlined in the Notice of Debt letter you recently received, our review of your case indicated that you were found ineligible for some or all of the funds FEMA provided you. . . . The Notice of Debt letter provided clear instructions on the options available to you, which included filing an appeal within 60 days of receipt of the letter. . . Your debt is now final, either because (1) you did not appeal within 60 days of receiving the Notice of Debt letter or (2) you did file an appeal and FEMA has separately informed you why we determined that you owe the sum shown.

(FEMA letter, Nov. 13, 2017, ECF No. 1-1, p. 11.)

Plaintiff also states that he "appealed the FEMA determination immediately" and that FEMA never responded. (Compl., p. 3.) In context, however, it seems clear that he didn't try to appeal FEMA's Notice of Debt until he got Transworld's collection notice:

> On October 1, 2018, I got 9/10/2018 Notice of Debt from TRANSWORLD Systems INC. willing to collect from me debt of $4217.22 acting behalf of US Department of Treasury acting based on 11/13/2017 FEMA determination in the case #[redacted]. I never had any idea of having any debt and of this determination. The Notice baselessly alleges "Due to your failure to pay this obligation (?), the entire unpaid balance of your debt is due and payable." So, I appealed the Notice immediately.

(Email to DHS Sec'y, Nov. 13, 2018, ECF No. 1-1, p. 4.) The Notice that Plaintiff quoted is Transworld's, not FEMA's.

Section 10(c) of the APA, 5 U.S.C. § 704, explicitly requires exhaustion of "intra-agency appeals mandated either by statute or by agency rule[.]" *Young v. Reno,* 114 F.3d 879, 882 (9th Cir. 1997). The language of 44 C.F.R. § 206.115(a), "*must* file their appeal" (emphasis added), makes appeal within FEMA mandatory. Unless Plaintiff can amend his pleadings to show he made a timely appeal to FEMA or otherwise exhausted administrative remedies, the Court cannot review the agency's action.

A case may be dismissed for failure to state a claim under Rule 12(b)(6) if a failure to exhaust administrative remedies is "clear on the face of the complaint." *Albino v. Baca,* 747 F.3d

8

1162, 1166 (9th Cir. 2014). Where failure to exhaust is not jurisdictional, the dismissal is without prejudice. *Wyatt v. Terhune,* 315 F.3d 1108, 1120 (9th Cir. 2003) (on prisoner's failure to exhaust under 42 U.S.C. § 1997e), *overruled on other grounds by Albino,* 747 F.3d at 1166. FEMA's time limits for filing an appeal may not be jurisdictional, in which case equitable tolling might excuse Plaintiff's failure to file within those limits if he lacked actual or constructive notice of them. *See Douglas Cty. v. U.S. Dept. of Homeland Sec.,* No. 3:09-CV-00544, 2010 WL 2521042 (D. Nev. June 9, 2010) (citing *Leong v. Potter,* 347 F.3d 1117, 1123 (9th Cir. 2003) on equitable tolling). In other words, for this claim to go forward, Plaintiff will have to add facts that show he never received a notice of debt from FEMA in late 2017, prior to the November 13, 2017 determination letter, or that support some other excuse why he was not aware he had been declared ineligible for assistance until Transworld Systems contacted him in late 2018. In an amended complaint, he should tell the Court whether the address on FEMA's November 13, 2017 letter was in fact his mailing address in November 2017.

In addition, the Court would like to know: When FEMA responded to his appeal on November 8, 2018 by sending him a copy of its November 13, 2017 determination letter, did the agency tell him anything else? Was a copy of the Notice of Debt letter also provided? Did FEMA send a cover memorandum or other message along with the copy of the 2017 letter? If so, the Court would like to see that message. Plaintiff asserts that FEMA never responded to his November 4, 2018 appeal. From the present pleadings, however, it appears that FEMA responded, and that it refused to allow the late appeal. (ECF No. 1-1, p. 4.)

## V. CONCLUSION

When FEMA sends notice it has determined that an applicant is ineligible for disaster assistance and should never have received it in the first place, the applicant has 60 days in which to appeal the determination within FEMA. By the time a collection agency comes knocking, it may be too late to ask a court to intervene.

In this case, because the face of the Complaint shows that Plaintiff did not exhaust administrative remedies, the Court DISMISSES it WITHOUT PREJUDICE. **Plaintiff may file an amended complaint no later than 14 days from the date of this order or the case will be dismissed with prejudice.**

Decision on Plaintiff's application to proceed in forma pauperis is deferred pending the filing of an amended complaint or dismissal if an amended complaint is not filed.

IT IS SO ORDERED this 23rd day of April, 2019.

_____
RAMONA V. MANGLONA
Chief Judge