**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| MILAN FARGO,<br><br>    Plaintiff,<br><br>        v.<br><br>FEDERAL EMERGENCY<br>MANAGEMENT AGENCY,<br><br>    Defendant. | Case No. 19-CV-00004<br><br>**SCREENING DECISION AND ORDER DISMISSING FIRST AMENDED COMPLAINT, IN PART, AND GRANTING LEAVE TO FILE SECOND AMENDED COMPLAINT ON CLAIM FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION** |

## I. INTRODUCTION

Pro se Plaintiff Milan Fargo's First Amended Complaint ("FAC," June 10, 2019, ECF No. 5) is before the Court for screening pursuant to 28 U.S.C. § 1915(e). On April 23, 2019, the Court dismissed Fargo's initial Complaint (ECF No. 1-1) against Defendant Federal Emergency Management Agency ("FEMA") because on its face it did not show that Fargo had exhausted administrative remedies. (Order Dismissing Pro Se Complaint, ECF No. 2.) The Court gave Fargo leave to amend to plead additional facts to show either that he exhausted such remedies or that his failure to exhaust should be excused. (*Id.* 9–10.) On May 3, instead of filing an amended complaint, Fargo submitted a copy of the Court's April 23 order which he had annotated with various comments and responses ("Fargo Copy," ECF 3-1). The Court did not accept this submission as a proper complaint but gave Fargo additional time to file a short and plain statement of his claim. (Order, ECF No. 4.) The Court warned Fargo that an amended complaint makes all previous complaints a nullity and that he would have to resubmit previously submitted exhibits to keep them before the Court. (*Id.*) Although Fargo submitted fifteen exhibits with the FAC, he left out some earlier exhibits without which it is almost impossible to make sense of his story. Notwithstanding the Court's prior order, and in the interest of judicial economy and moving this matter along to a just resolution, the Court will refer to some of those materials.

1

## II. DISCUSSION

In the FAC, Fargo makes these claims:

(1) FEMA "wrongfully rescinded $2,990 in disaster assistance it provided to me in the aftermath of Typhoon Soudelor, 2015." (FAC, p. 1.) "FEMA's deduction of $4217.22 [including interest, costs and fees] is not based on Stafford Act provisions." (FAC ¶ 1.)[1]

(2) FEMA "never responded to my request for compensation for the damages caused to me by occupying Saipan Aging Center and depriving me of the services vital to survive Typhoon Soudelor, 2015." (FAC ¶ 2.)

(3) FEMA never responded to his request for financial assistance to cover medical treatment for his feet, which got infected in the flooding that Soudelor caused. (FAC ¶ 3.)

(4) FEMA discriminated against him and other CNMI victims of Typhoon Soudelor by not providing them with email accounts, as FEMA has done for disaster victims in the mainland. (FAC ¶ 4.)

(5) FEMA violated the Administrative Procedure Act, 5 U.S.C. § 555[2], by not informing him within a reasonable time about decisions on his application for relief from Supertyphoon Yutu, which struck Saipan on October 23–24, 2018. (FAC ¶ 5.)

(6) After Yutu, FEMA allowed Fargo to register for an email account but "never let me use it. FEMA did so by not letting me to open the account." (FAC ¶ 6.) He asserts that FEMA has a duty to "keep[] electronic means of connection in order." (*Id.*)

The Court lacks jurisdiction to conduct judicial review of most FEMA actions and failures to act. The United States and its agencies enjoy sovereign immunity and can only be sued to the

---

[1] The FAC begins with several unnumbered paragraphs before listing claims in numbered paragraphs.
[2] Fargo specifically referenced the Administrative Procedure Act in his original complaint. (ECF No. 1-1 at 1.)

extent that Congress has waived such immunity. *United States v. Mitchell,* 445 U.S. 535, 538 (1980); *Tritz v. U.S. Postal Serv.,* 721 F.3d 1133, 1136 (9th Cir. 2013.) The Stafford Act does not waive sovereign immunity for a FEMA employee's action or failure to act in the performance of a "discretionary function or duty" in carrying out the Stafford Act's provisions. 42 U.S.C. § 5148. Nor can federal employees be sued under the Federal Tort Claims Act, 28 U.S.C. § 1346, for claims based on a federal employee's performance or nonperformance of a discretionary function or duty, "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Plaintiff bears the burden of demonstrating that the United States has waived its sovereign immunity. *Prescott v. United States,* 973 F.2d 696, 701 (9th Cir. 1992).

To determine whether the discretionary function exception applies, courts engage in a two-step analysis. If a federal statute, regulation or policy "specifically prescribes a course of action for an employee to follow" and thus strips the employee of any discretion, the exception does not apply. *Routh v. United States,* 941 F.2d 853, 855 (9th Cir. 1991). "If the challenged conduct does involve an element of judgment," then the court proceeds to the second step and must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield"—namely, judgment "grounded in social, economic and political policy." *Id.* (internal citation and quotation marks omitted).

Most disaster relief provisions are discretionary and beyond the jurisdiction of the court to review. *Graham v FEMA,* 149 F.3d 997, 1005 (9th Cir. 1998); *Ridgely v. FEMA,* 512 F.3d 727, 735–36 (5th Cir. 2008) (finding that FEMA decision to discontinue rental assistance is discretionary and does not create an entitlement, "even if assistance is being offered and [the individual] meets the eligibility criteria"); *City of San Bruno v. FEMA,* 181 F. Supp. 2d 1010, 1014 (N.D. Cal. 2001). This follows from the text of the Stafford Act. "Federal agencies *may*" – not *shall* – "on the direction of the President, provide assistance essential to meeting immediate threats to life and property resulting from a major disaster[.]" 42 U.S.C. § 5170b (emphasis

added). Fargo's request for financial assistance for medical care clearly falls within this exception. To the extent that Fargo has suffered collateral damage from FEMA's actions to assist the Saipan community, such as turning the Aging Center into a temporary shelter, any claim under either the Stafford Act or the Federal Tort Claims Act will be outside the Court's jurisdiction for this same reason. These actions require FEMA and its employees to exercise discretion in doling out limited emergency aid, and such exercise of discretion would be informed by social, economic and political considerations. Because they involve discretionary functions and duties, Fargo is not entitled to a writ of mandamus ordering FEMA to act on his claims for relief. *See Kashkool v. Chertoff,* 553 F. Supp. 2d 1131, 1142 (D. Ariz. 2008) ("To be entitled to relief under the APA [5 U.S.C. § 555(b)], Plaintiff must establish a nondiscretionary duty to act"). Fargo has not pointed to any statute, regulation or policy that establishes a nondiscretionary duty to provide email accounts. Fargo's frustration at not being able to open his email, after FEMA registered him, is beyond the power of this Court to remedy. For these reasons, the Court does not have jurisdiction to hear Fargo's second, third, fourth, fifth, and sixth claims.

That leaves Fargo's first claim, going back to the initial Complaint, that in November 2017 FEMA erroneously determined that he was ineligible for the disaster assistance the agency provided him in the aftermath of Typhoon Soudelor, which struck Saipan in August 2015, and that FEMA is wrongly trying to recover from him more than four thousand dollars in assistance funds plus interest, costs and fees. (Compl. 1.) In the First Amended Complaint, he states that he was unaware of FEMA's November 2017 determination until he received a debt collection notice in September 2018 from Transworld Systems Inc., with whom the U.S. Department of the Treasury has placed his account. (FAC at 1.) On November 4, 2018, Fargo went to the federal Disaster Assistance Center, which opened in Saipan in response to Supertyphoon Yutu, and had an appeal letter faxed to FEMA. (Compl. 3; Fargo Copy 11.) In response, FEMA sent him a copy of a letter from a year earlier, dated November 13, 2017. (Fargo Copy 1.) In the 2017 letter,

FEMA told Fargo that it had sent him a Notice of Debt two months earlier, advising him that the agency had reviewed his case and found that he was ineligible for some or all of the assistance he had been given and outlining the available appeal process. (Compl. 11.) FEMA informed Fargo that either because he had not appealed the decision administratively within 60 days of receiving the Notice of Debt or because his administrative appeal had been denied, "Your debt is now final." (*Id.*) Fargo maintains that he did not get the Notice of Debt in September 2017 or the final notice in November 2017 because he was no longer receiving mail at the address FEMA had on file for him – a private mail box number. He asks the Court to "void 11/13/2017 FEMA determination and let me have my $4217.22" and to "apply punitive sanctions against FEMA for it never wanted to act this way again." (FAC at 2.)

Unlike the other actions by FEMA of which Fargo complains, this one may be subject to judicial review. FEMA appears to have a nondiscretionary duty to audit itself and try to recoup assistance funds that it erroneously provided during an emergency. *See* 42 U.S.C. 5161 (with respect to FEMA,"the President shall conduct audits and investigations as necessary to assure compliance…"); 31 U.S.C. § 3521 ("the head of each agency shall prescribe regulations for conducting the audit …"); 31 U.S.C. § 3711(a) (providing that the head of any federal agency "shall try to collect a claim of the United States Government for money or property arising out of the activities of … the agency"). Federal regulations require each federal agency to "aggressively collect all debts arising out of activities of … that agency. Collection activities shall be undertaken promptly with follow-up action taken as necessary." 31 C.F.R. § 901.1(a).

The Administrative Procedure Act provides for judicial review of "final agency action for which there is no other adequate remedy in a court …" 5 U.S.C. § 704. Agency action is final "[w]hen an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule[.]" *Darby v. Cisneros,* 509 U.S. 137, 146 (1993). Exhaustion is required when a statute or rule "clearly mandates" it. *Id.* There are two types of administrative exhaustion

5

requirements: (1) jurisdictional and (2) prudential. *Puga v. Chertoff,* 488 F.3d 812, 815 (9th Cir. 2007). If exhaustion is required by statute, i.e. by Congress, it is mandatory and jurisdictional; otherwise it is a prudential requirement so as to discourage petitioners from bypassing the administrative scheme and to allow the agency to correct its own mistakes. *Id.* Courts have discretion to waive prudential exhaustion under appropriate circumstances. *Id.*

Congress has provided that a FEMA determination of assistance "may be appealed within 60 days after the date on which the applicant for such assistance is notified of the award or denial of award of such assistance." 42 U.S.C. 5189a(a). The statute gives a right of appeal but does not make appeal mandatory. FEMA regulations, in contrast, mandate that individuals who wish to appeal an eligibility determination "*must* file their appeal within 60 days" after notification of the determination. 44 C.F.R. § 206.115(a) (emphasis added). Appealable determinations include "[e]ligibility for assistance, including recoupment[.]" 44 C.F.R § 206.115(a)(1). Because the statute does not make exhaustion of FEMA claims mandatory, exhaustion is not jurisdictional and the court has discretion to waive the requirement. Moreover, because FEMA exhaustion is a nonjurisdictional claim-processing rule, Fargo does not have to plead exhaustion in the complaint, but FEMA may offer it as an affirmative defense. *See Payne v. Peninsula School Dist.,* 653 F.3d 863, 867 (9th Cir. 2011), *overruled on other grounds by Albino v. Baca,* 747 F.3d 1162 (9th Cir. 2017).

Nevertheless, Fargo has provided an excuse for failing to file an administrative appeal, and it bears examination. According to FEMA's November 13, 2017 letter to Fargo, the debt that the agency determined he owes the federal government "is now final" (Compl. 11.) The reason it became final is that Fargo did not file an administrative appeal within 60 days of receiving the agency's Notice of Debt. Fargo asserts he could not have filed an appeal within that time because, through no fault of his own, he was no longer receiving mail at the address FEMA had on file and he never received the Notice of Debt.

6

In rare cases, the limitations period on administrative appeal may be equitably tolled. *Disabled Rights Union v. Shalala,* 40 F.3d 1018, 1021 (9th Cir. 1994) (citing *Bowen v. City of N.Y.,* 476 U.S. 467, 481 (1986)). Fargo has alleged a plausible excuse for failing to lodge an administrative appeal within the agency's time frame. If the FEMA assistance had been in the form of a loan, the excuse would be implausible, because no doubt he would have been under a duty to inform the agency of a change of address until the loan was fully repaid. The circumstances here, however, may not present the "garden variety claim of excusable neglect" to which "the principles of equitable tolling … do not extend." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990). Fargo could not know about the audit and had no reason to be on the lookout for a recoupment letter from FEMA. He had no claim pending with FEMA for which he was awaiting a determination.

The Court is not making a finding that Fargo's neglect was in fact excusable. FEMA may choose to plead exhaustion as an affirmative defense and may be able to show that Fargo's failure to exhaust should not be excused.

Before allowing this action to proceed, however, the Court must satisfy itself that Fargo has standing – that he has "alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction." *Summers v. Earth Island Institute,* 555 U.S. 488, 493 (2009) (original emphasis; internal citations and quotation marks omitted). A plaintiff must show standing "for each type of relief sought." *Id.* Fargo's prayer for the debt to be voided is within the Court's power, on judicial review, to "hold unlawful and set aside agency action, findings, and conclusions …" 5 U.S.C. § 706(2). The Court takes his plea to "let me have my $4217.22" to mean that he should be allowed to keep the money FEMA gave him and not have to pay it back with interest, costs and fees. This is not a different type of relief, but the natural consequence of voiding FEMA's final agency action. Punitive damages, however, are outside the scope of judicial review as delineated in section 706 of the Administrative Procedure Act.

*See Armstrong & Armstrong, Inc. v. United States by and through Morton,* 356 F. Supp. 514, 521 (E.D. Wash. 1973) ("monetary relief is not available" under the APA); *Hurst v. U.S. Postal Serv.,* 491 F. Supp. 870, 873 (W.D. Mo. 1980) ("The Administrative Procedure Act does not permit a court to award punitive damages.").

Fargo has standing to challenge FEMA's debt determination. To establish standing, a plaintiff must satisfy a three-part test and show (1) injury in fact, (2) causation, and (3) redressibility. *Harris v. Board of Supervisors, L.A. Cnty.,* 366 F.3d 754, 760 (9th Cir. 2004) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). An injury in fact is "a 'concrete and particularized' and 'actual or imminent' harm to a legally protectable interest." *Id.* (quoting *Lujan,* 504 U.S. at 560). The injury to Fargo is concrete and particular – an administrative decision permitting the agency to recoup a cash award from him directly. FEMA does not appear to have reclaimed any money from him yet. Fargo does not allege, for example, that his wages or benefits have been garnished.[3] However, interest and fees are accruing – $33.28 in interest and $973.07 in fees by September 10, 2018, according to Transworld's letter, which states: "This account balance will be periodically increased due to the addition of accrued interest, accrued penalty charges, administrative costs, and other fees[.]" (ECF No. 1-1, p. 12.) FEMA warned him, in November 2017, that if he did not take prompt action "FEMA and [the Department of the] Treasury will continue to add administrative charges, interest and penalties to your unpaid debt <u>until your debt is paid in full</u>." (Compl. 11 (original underlining).) It further warned that his debt could be referred to the Department of Justice "for judicial enforcement[.]"

---

[3] In his initial complaint, but not in the FAC, Fargo alleged that "FEMA already took $4217 from my disaster assistance for 2018 Yutu Supertyphoon … because has given me $313 only." Fargo may be right that the recoupment decision factored into the small amount of Yutu assistance he got. In the November 13, 2017 letter, FEMA warned Fargo that failure to pay the debt "could jeopardize future disaster assistance." (ECF No. 1-1, p. 11.) But withholding of Yutu assistance would not cancel the debt. The provision of disaster assistance is at FEMA's discretion, and disaster victims have no vested right to any particular amount of assistance. Therefore, FEMA would not recoup any cash on the books by reducing an award to Fargo for Yutu assistance.

(*Id.*) These actual and imminent harms are sufficient to satisfy the injury requirement of standing. As to the other two prongs, a causal connection to FEMA's recoupment efforts is clear, and a Court order pursuant to 5 U.S.C. § 706 would redress the injury.

This result accords with the general rule that a plaintiff has standing to challenge agency action when he or she is an object of the agency action at issue. *Davis v. EPA,* 348 F.3d 772, 778 (9th Cir. 2003) (citing *Sierra Club v. EPA,* 292 F.3d 895, 900 (D.C. Cir. 2002)). When agency action is directed at a particular individual, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing … the action will redress it." *Lujan,* 504 U.S. at 561–62.

### III. CONCLUSION

For these reasons, the Court finds that Fargo has stated a claim on which relief may be granted, but <u>only as to FEMA's final determination that Fargo was ineligible for disaster assistance after Typhoon Soudelor</u>. All other claims – for failing to respond to requests for medical assistance, for using the Aging Center as a shelter, for problems with email, and for any assistance relating to Supertyphoon Yutu – are dismissed <u>with prejudice</u>. Fargo may not renew them in any amended pleadings. The prayer for punitive damages is stricken. Also, Fargo may not add any new claims without first making a motion for the Court's permission to add them and obtaining the Court's permission to do so.

Although the Court, with some effort, has pulled together Fargo's one viable claim from the many pleadings and exhibits, they are not "short and plain statement" of his entitlement to relief, as required by Rule 8 of the Federal Rules of Civil Procedure, so as to put Defendant FEMA on notice of the claim and allow the agency to answer or otherwise respond appropriately. Therefore, the Court ORDERS Fargo to file a Second Amended Complaint <u>limited to his claim on FEMA's eligibility determination for the Soudelor assistance</u>. The Second Amended

Complaint and any exhibits (letters, emails, and other documents) that Fargo attaches to it will be the only complaint and exhibits that are served on FEMA.

The Second Amended Complaint and exhibits must be filed **no later than July 31, 2019.**

Fargo's application to proceed in forma pauperis is GRANTED.

IT IS SO ORDERED this 16th day of July, 2019.

/s/ Ramona V. Manglona
RAMONA V. MANGLONA
Chief Judge